Andre CARSTENSEN, Appellant,

v.

BOARD OF TRUSTEES OF the POLICE RETIREMENT SYSTEM OF the CITY OF STORM LAKE, Iowa, and Wilbur Tucker, Chairman of Said Board, Appellees.

No. 2–58163.

Supreme Court of Iowa.

May 25, 1977.

Meardon, Sueppel, Downer & Hayes by James P. Hayes, Iowa City, for appellant.

Mack, Hansen & Gadd by Douglas W. Hansen and Stephen R. Gadd, Storm Lake, for appellees.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

RAWLINGS, Justice.

On certiorari to Buena Vista District Court defendant Board's denial of plaintiff's application for a disability retirement police pension was upheld. Plaintiff appeals. We affirm.

In early July 1965, the City of Storm Lake engaged plaintiff, Andre Carstensen, as chief of police. He was employed without a physical examination and from July 1965 through 1973 contributed to a Chapter 410, The Code 1973, municipal pension fund. January 1, 1974, the police department was placed under civil service. Thereupon a Code ch. 411 pension service was effectuated. Plaintiff was thus accredited and promptly started contributing to the newly created fund, absent a physical examination.

December 22, 1973, plaintiff was involved in an altercation while performing official duties and hospitalized because of a suspected heart condition. January 14, 1974, he returned to work.

February 14, Carstensen filed application with defendant Board of Trustees for allowance of disability retirement benefits pursuant to Code § 411.6(3), (5). April 5, he was examined by the Code § 411.5(9) medical board. All three doctors concluded plaintiff had a heart disease and affirmatively stated Carstensen is incapacitated for performance of duty and such is likely to be permanent. One examiner stated, however, plaintiff's incapacity, though permanent, is not total. The record also reveals that in May 1974, Carstensen applied for a private detective license. He also remained on duty for approximately two months after having applied for a disability pension.

June 24, 1974, hearing was had on the February 14 application. Letters from the three medical board members and those submitted by Carstensen's doctors were received in evidence.

July 22, 1974, defendant Board denied plaintiff's ordinary disability pension application under § 411.6(3). Also rejected was Carstensen's § 411.6(5) accidental disability application.

Trial court held defendant Board's holdings were supported by competent and substantial evidence of record.

These are the issues here raised by plaintiff:

(1) Did trial court err in concluding petitioner must have five years membership service under ch. 411 in order to be entitled to ordinary disability benefits under § 411.6(3), The Code 1973?

(2) Did trial court err in concluding there was substantial evidence to support the Board's finding petitioner is not totally disabled for duty?

(3) Did trial court err in concluding the Board had rebutted the presumption that petitioner's heart disease was contracted or aggravated while on active duty?

(4) Did trial court err in concluding petitioner's heart condition must have been contracted or aggravated after he became a member of the retirement system under ch. 411 on January 1, 1974?

I. Certiorari is an ordinary proceeding triable as a law action. On review,

questions of fact resolved by the deciding officer or tribunal are not usually reviewable. The question posed is whether the decision is supported by any competent and substantial evidence, and the burden of showing illegality rests upon an asserting party. The fact that a different or opposite result may have been fully justified by the record is of no importance. A trial de novo is not ordinarily permitted on certiorari. See *Reisner v. Board of Trustees of Fire Retirement Sys.*, 203 N.W.2d 812, 814 (Iowa 1973); *Cedar Rapids Steel Transp. v. Iowa State Com. Com'n.*, 160 N.W.2d 825, 831 (Iowa 1968), cert. den., 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969). See also *Collier v. Denato*, 247 N.W.2d 236, 237–239 (Iowa 1976); *State v. Cullison*, 227 N.W.2d 121, 126–127 (Iowa 1975).

▮ Also when, as in this case, the law clothes an inferior official or body with authority to effect a decision on facts submitted, the determination is not illegal if the subject matter and parties are within its jurisdiction and there is substantial competent supportive evidence. Judicial review of facts is only for the purpose of determining whether the decision is adequately upheld by the record. See *Staads v. Board of Trus. of Fireman's Ret. Pension Fund*, 159 N.W.2d 485, 490 (Iowa 1968). See generally 2 Am.Jur.2d, Administrative Law, § 657; 73 C.J.S. Public Administrative Bodies and Procedure § 223.

▮ II. As aforesaid, Carstensen first takes the position trial court erred in concluding plaintiff must have had five years retirement system membership in order to qualify for ordinary disability benefits under § 411.6(3), quoted *infra*. More specifically, plaintiff maintains a more logical view is that persons included within ch. 410 pension plans are to be transferred to ch. 411 retirement systems without losing either benefits or tenure under the original plan. We are not so persuaded.

Section 411.6(3) states in relevant part: "[A]ny member who has had five or more years of *membership service* shall be retired by the respective board of trustees * * * on an ordinary disability retirement allowance, provided * * * that said member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired." (emphasis supplied).

Section 411.1(8) says: " 'Membership service' shall mean service as policemen or firemen rendered since last becoming a member, or, where membership is regained as provided in this chapter, all of such service."

In § 411.1(4), we find: " 'Member' shall mean a member of either the police or fire retirement systems as defined by section 411.3."

And, by § 411.3, "membership" is thus defined: "1. All persons who become policemen or firemen *after the date such retirement systems are established by this chapter*, shall become members thereof as a condition of their employment." (emphasis supplied).

These statutes are unambiguous. Consequently, there need be no resort to rules of construction. See *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976); *Heins v. City of Cedar Rapids*, 231 N.W.2d 16, 18 (Iowa 1975).

In order to qualify for ordinary disability retirement benefits it was essential Carstensen have at least five years service as a member of the ch. 411 retirement system. But he had only four months. Therefore, plaintiff was not entitled to any § 411.6(3) ordinary disability benefit.

Parenthetically, plaintiff's reliance on *Mathewson v. Board*, 226 Iowa 61, 283 N.W. 256 (1939), is misplaced. In construing what is now Code § 410.6, the *Mathewson* court said, 226 Iowa at 67–68, 283 N.W. at 260:

"When the legislature enacted section 6315 it did not therein specify that the time of service was to commence with the time that the fire department became a pension-paying department. Rather, it said 'any member of said departments who shall have served twenty-two years.'

" * * * A fair interpretation of the statute seems to us to mean that when one has served in the fire department for twenty-two years or more, * * * he comes within the provisions of the pension act."

As stated above, however, § 411.6(3) explicitly requires at least five years of *membership service*. And the cited Act, heretofore quoted, clearly restricts plaintiff's start of "membership" for ordinary disability benefits, unlike those attendant upon accident disability, to time *after* the Storm Lake ch. 411 retirement system was established, i. e., January 1, 1974.

Carstensen's application for § 411.6(3) ordinary disability retirement benefit was properly denied.

III. Plaintiff's last three issues involve applicability of § 411.6(5), accident disability benefit. Being interrelated they will be accordingly entertained.

Carstensen asserts trial court's finding that, in order to recover under § 411.6(5) for accident-related heart disability, petitioner must show such condition was incurred or aggravated after January 1, 1974, is contrary to law. We agree.

Section 411.6(5) says:

"Upon application of a member in service or of the chief of the police or fire departments, respectively, any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place, or while acting pursuant to order, outside of the city or town by which he is regularly employed, shall be retired by the respective board of trustees, provided, that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired.

"Should a member in service or the chief of the police or fire departments become incapacitated for duty as a natural or proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time or place or while acting, pursuant to order, outside the city or town by which he is regularly employed, he shall, upon being found to be temporarily incapacitated following an examination by the board of trustees, be entitled to receive his full pay and allowances until re-examined by said board and found to be fully recovered or permanently disabled.

"Disease under this section shall mean heart disease or any disease of the lungs or respiratory tract and shall be presumed to have been contracted while on active duty as a result of strain or the inhalation of noxious fumes, poison or gases."

This court addressed the issue as to retroactivity of § 411.6(5) in *City of Iowa City v. White*, 253 Iowa 41, 111 N.W.2d 266 (1961). There the police chief applicant was similarly seeking heart-related disability benefits. The incidents which caused his disability occurred prior to enactment of ch. 293, Fifth General Assembly, amending § 411.6(5), but the pension application was filed after the amendment became effective. As articulated by the court, 253 Iowa 45, 111 N.W.2d 268, this was the problem presented: "Is it necessary that a police officer in active service suffer an injury after July 4, 1959, in order to qualify for accidental disability benefits, under the provisions of section 411.6(5), 1958 Code of Iowa, as amended * * * July 4, 1959 * * *?" In response, it was held the board of trustees' decision granting applicant's pension request did not result in a retroactive application of the statute as amended. Here defendant Board would have us limit *White* to amendments enacted after injury but in force when an application for benefits is made. *White* cannot be so narrowly construed. Demonstrably, the court said, 253 Iowa at 48, 111 N.W.2d at 270: "We hold the statutes in force when a pensioner's application is filed, or when the Pension Board makes its decision, and not the date

of injury or disease or aggravation thereof, control the allowance of the pension."

We now focus upon the language of § 411.6(5).

Specifically, defendant Board contends the phrase "any member who has become totally and permanently incapacitated" implies an incapacitation must be the result of an injury incurred in or aggravated by the actual performance of duty while a member of the retirement system. In essence, the Board says the above noted language means "any member who *shall* become * * * incapacitated * * *."

Such interpretation of the statute would create an unfair and absurd result, therefore to be avoided. See *Lynch v. Bogenrief*, 237 N.W.2d 793, 797 (Iowa 1976). Moreover, laws creating pension rights are liberally construed to promote the legislative purpose and objective. See *Rockenfield v. Kuhl*, 242 Iowa 213, 217, 46 N.W.2d 17 (1951); 3 Sutherland, Statutory Construction, § 71.09 (3d ed. 1974).

There is to us no policy rationale requiring ch. 411 membership prior to a disease-aggravating incident. In addition, the statutory phraseology cannot be subjected to such revision as the Board now seeks.

Trial court erred in concluding plaintiff's heart condition must have been contracted or aggravated after he became a member of the ch. 411 retirement program. This, though, is not determinative.

IV. The question now to be resolved is whether petitioner established a right to § 411.6(5) accident disability benefits.

Plaintiff must prove two facts in order to so qualify. First, he must show injury or disease "incurred in or aggravated by the actual performance of duty at some definite time and place". Second, it must be shown he was totally and permanently incapacitated for duty as the natural and proximate result of such injury or disease. See *Reisner v. Board of Trustees of Fire Retirement Sys.*, 203 N.W.2d at 814. See also *Cansdale v. Board of Ad., Pub. Emp. Retire. System*, 59 Cal.App.3d 656, 130 Cal.Rptr. 880, 885

(1976); *Quincy Retirement Bd. v. Contributory Retire. App. Bd.*, 340 Mass. 56, 162 N.E.2d 802, 805 (1959).

At the outset Carstensen is aided by this portion of § 411.6(5): "Disease under this section shall mean heart disease * * * and shall be presumed to have been contracted while on active duty as a result of strain or the inhalation of noxious fumes, poison or gases." That phraseology has been held to waive the need to prove a disease, once shown to exist, was incurred or aggravated by the actual performance of duty at some definite time and place, as is required in case the disability results from injury rather than disease. See *Reisner v. Board of Trustees of Fire Retirement Sys.*, 203 N.W.2d at 815. See generally 2 Am. Jur.2d, Administrative Law, § 391; 73 C.J.S. Public Administrative Bodies and Procedure § 124.

Both defendant Board and trial court held this presumption had been effectively rebutted by evidence introduced at trial. We agree.

All doctors stated (1) plaintiff was incapacitated for duty; (2) such incapacity was permanent; and (3) as a result thereof, plaintiff should not continue his work as Storm Lake Police Chief. Plaintiff contends this showing is sufficient to establish his qualification for benefits under the holding in *Butler v. Pension Board of Police Department*, 259 Iowa 1028, 147 N.W.2d 27 (1966). We are not so persuaded. As later revealed the instant case comes before us on a contradictory series of facts, while *Butler* was premised upon an incorrect application of § 411.6(5) to uncontroverted facts. See *Reisner*, 203 N.W.2d at 815.

Looking to the record, one medical examiner opined plaintiff's work as a law enforcement officer, particularly the December 22, 1973 incident, aggravated his heart condition. Two doctors expressed the belief Carstensen's pre-existing affliction "can be" or "will be" job aggravated. On the other hand, one physician declared plaintiff's "incapacity for duty was not incurred in or aggravated by actual performance of duty

at some definite time or place". The same examiner also stated plaintiff's incapacity, though permanent, was not total and the Board had every right to accept or reject this latter unexplained statement even if inconsistent with other expert testimony. See *Miller v. International Harvester Co.*, 246 N.W.2d 298, 302 (Iowa 1976); *Cansdale v. Board of Ad., Pub. Emp. Retire. System*, 130 Cal.Rptr. at 885.

Upon the basis of the above stated evidence, defendant Board, as trier of the fact, justifiably concluded any § 411.6(5) presumption, noted in *Reisner*, 203 N.W.2d 815, had been effectively overcome or rebutted. See 1 Jones on Evidence, §§ 3:5, 3:6, 3:8 (Gard ed. 1972); 9 Wigmore on Evidence, §§ 2490–2492 (3d ed. 1940); 29 Am.Jur.2d, Evidence, §§ 161–165; 31A C.J.S. Evidence §§ 114–118. See also *State v. Lewis*, 242 N.W.2d 711, 716–718 (Iowa 1976).

Finally, in light of the foregoing array of conflicting testimony, defendant Board could and did conclude "Andre Carstensen is not entitled to benefits under Chapter 411.6(5) nor to any disability benefits provided by Chapter 411." This holding is amply supported by competent and substantial testimony.

Every contention presently advanced by Carstensen in support of a reversal, whether or not discussed above, has been considered and found to be without merit.

AFFIRMED.